

FILED ORIGINAL

FEE PAID
NK

2024 NOV -6  PM 12: 39

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: _____

1  ENZO ZELOCCHI
2  *333 Washington Blvd #244*
   *Marina Del Rey, CA, 90292*
3  *910-898-9077*
   *DESERTSTORM99@PROTONMAIL.COM*
4  Plaintiff, in pro per

5

6

7              UNITED STATES DISTRICT COURT

8         FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10  **ENZO ZELOCCHI**, an individual,  )   Docket No.: No. 2.24cv9601-WLH(JPR)
                Plaintiff,          )
11                                  )   **COMPLAINT FOR**
           vs.                      )
12                                  )   1. **VIOLATION OF THE**
13  **ADAM IZA**, an individual; **IRIS AU**,  )      **RACKETEER INFLUENCED**
    an individual; **RICHARD**      )      **AND CORRPUT**
14  **DUDGEON**, an individual; **DEAN** )      **ORGANIZATION ACT**
                                    )      **(RICO), 18 U.S.C. § 1962**
15  **BRYAN RAWLINGS**, an individual; )   2. **VIOLATION OF THE**
    **CHRISTOPHER QUINTENERO**,     )      **COMPUTER FRAUD AND**
16  an individual; **MICHAEL**      )      **ABUSE ACT (CFAA), 18**
                                    )      **U.S.C. § 1030**
17  **QUINTENERO**, an individual;  )   3. **VIOLATION OF**
    **TROY WOODY JR.**, an individual; )      **CALIFORNIA PENAL CODE**
18  **KATY DIANN WOODY**, an        )      **§ 502 (UNAUTHORIZED**
                                    )      **ACCESS OF COMPUTERS)**
19  indivdual; **THOMAS CORNELIA**, )   4. **ATTEMPTED EXTORTION**
    an individual; **CORNELIA MEDIA,** )   5. **AIDING & ABETTING**
20  **LLC.**, a Nevada corporation; )   6. **CONSPIRACY TO VIOLATE**
                                    )      **RICO, 18 U.S.C. § 1962(d)**
21  **KENNETH CHILDS**, an individual; )   7. **ASSAULT**
    **PARAMOUNT INVESTIGATIVE**        8. **BATTERY**
22  **SERVICES**, a California corporation; 9. **TRESPASS TO LAND**
    and **DOES 1-10**, INCLUSIVE     10. **INTENTIONAL INFLICTION**
23                                         **OF EMOTIONAL DISTRESS**
           Defendants              11. **DEFAMATION PER SE**
24                                  12. **FALSE LIGHT INVASION**
                                         **OF PRIVACY**
25  _____
                                       **DEMAND FOR JURY TRIAL**
26

Plaintiff ENZO ZELOCCHI ("ZELOCCHI"), proceeding in pro per, bring this Complaint for violation of the Racketeer Influenced and Corrupt Organization Act ("RICO") and the Computer Fraud and Abuse Act ("CFAA"), as well as related state causes of action, against Defendants ADAM IZA ("IZA"), IRIS AU ("AU"), RICHARD RAYMOND DUDGEON ("DUDGEON"), DEAN BRYAN RAWLINGS ("RAWLINGS"), CHRISTOPHER QUINTENERO ("C. QUINTENERO"), MICHAEL QUINTENERO ("M. QUINTENERO"), TROY WOODY JR. ("T. WOODY"), KATY WOODY ("K. WOODY"), SPENCER THOMAS CORNELIA ("CORNELIA"), CORNELIA MEDIA LLC. ("C. MEDIA"), KENNETH CHILDS ("CHILDS"), PARAMOUNT INVESTIGATIVE SERVICES ("PARAMOUNT"), and DOES 1-10 ("Defendants") and allege as follows:

## **NATURE OF THE CASE**

This lawsuit arises from a series of coordinated criminal and unlawful acts by the Defendants aimed at unlawfully acquiring ZELOCCHI's cryptocurrency, intimidating ZELOCCHI, and engaging in other unlawful acts. The enterprise engaged in racketeering activities including extortion, fraud, robbery, kidnapping, criminal copyright infringement, obstruction of justice, and violations of the Computer Fraud and Abuse Act (CFAA). These activities caused substantial harm to ZELOCCHI, including financial losses, damage to their reputations, emotional distress, and physical harm.

## **JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question) for claims arising under the Racketeer Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. §§ 1961–1968 and the Computer Fraud and Abuse Act (CFAA) 18 U.S.C. § 1030.

2.      The Court also has supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367.

3.      The Defendants committed torts and crimes in the State of California as alleged herein, establishing personal jurisdiction in this Court. Additionally, Defendant's intentional and wrongful actions aimed at Plaintiff, a California resident, further support jurisdiction.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES

5.      Plaintiff ENZO ZELOCCHI ("ZELOCCHI") is an individual and a California resident, film producer, actor and entrepreneur. In addition to his work in the entertainment industry, ZELOCCHI is engaged in various business ventures, including A-Medicare, a healthcare platform aimed at providing secure access to universal healthcare. DO, a business consultant and freelancer, was hired by ZELOCCHI to assist in the development of the A-Medicare website, establishing their professional association. As part of his business activities, ZELOCCHI maintains significant cryptocurrency assets stored on his personal laptop, which became a central target of the defendants' alleged criminal activities. The defendants' actions, including their attempts to acquire ZELOCCHI's laptop, were aimed at gaining access to these assets. The defendants have also caused significant harm to ZELOCCHI's professional reputation, resulting in financial and reputational damage.

6.      Defendant ADAM IZA (formerly known as AHMED FAIQ aka ADAM FAIQ, hereinafter "IZA") is an individual and a California resident and, on information and belief, orchestrated a scheme involving extortion, robbery, assault,

1    kidnapping, and defamation to acquire ZELOCCHI's cryptocurrency. IZA's

2    actions include directing multiple extortion attempts, coordinating criminal

3    activities, including the kidnapping of ZELOCCHI in Corona, California, and

4    being involved in physical assaults and battery of ZELOCCHI and those acting as

5    his agent.

6        7.      Defendant IRIS AU ("AU"), is an individual and a California resident

7    and the girlfriend of Defendant ADAM IZA. On information and belief, AU

8    allegedly participated in IZA's fraudulent and extortionate efforts by filing a

9    frivolous lawsuit and financially supporting illegal activities. Evidence presented

10   in other lawsuits suggests her deeper involvement.

11       8.      Defendant RICHARD RAYMOND DUDGEON ("DUDGEON") is

12   an individual and a former Los Angeles Deputy Sheriff residing in California. On

13   information and belief, DUDGEON used his knowledge and experience as a

14   former law enforcement officer to assist IZA in criminal activities that were part of

15   an extortion scheme. This included coordinating with other defendants in the

16   kidnapping and armed robbery of ZELOCCHI, providing tactical support to

17   facilitate the execution of these crimes, and leveraging his former position to help

18   IZA evade detection and arrest.

19       9.      Defendant DEAN BRYAN RAWLINGS ("RAWLINGS") is an

20   individual and an active Los Angeles County Sheriff's Deputy residing in

21   California. On information and belief, RAWLINGS used his knowledge,

22   experience, and resources as a Sheriff's Deputy to assist IZA in criminal activities

23   that were part of an extortion scheme, including planning and coordinating an

24   armed robbery and kidnapping of ZELOCCHI at an Arco gas station. RAWLINGS

25   is also alleged to have helped IZA evade arrest by using his connections and

26   familiarity with law enforcement procedures, constituting obstruction of justice.

10.     Defendant CHRISTOPHER QUINTENERO ("C. QUINTENERO"), an individual and a California resident, is believed to be an active Los Angeles Deputy Sheriff. On information and belief, C. QUINTENERO used law enforcement resources to provide IZA with confidential information, violating department policies.

11.     Defendant MICHAEL QUINTENERO ("M. QUINTENERO") is an individual and a California resident, and the brother of Defendant C. QUINTENERO. On information and belief, M. QUINTENERO participated in the robbery of non-party DAVID DO ("DO")'s personal belongings, forcibly taking DO's laptop bag as part of the larger extortion campaign targeting ZELOCCHI.

12.     Defendant TROY WOODY JR. ("T. WOODY") is an individual and a resident of California, currently incarcerated in the Philippines. On information and belief, T. WOODY directed extortion attempts targeting ZELOCCHI from abroad, including using electronic means to make threats and demands for cryptocurrency. T. WOODY is further alleged to have coordinated these efforts with IZA and other co-defendants, actively supporting the extortion scheme despite his physical absence from the U.S.

13.     Defendant KATY WOODY ("K. WOODY") is an individual and a resident of Virginia, and the mother of Defendant T. WOODY. On information and belief, K. WOODY financially supported her son's extortion efforts and those of IZA, including funding resources used to carry out the extortion scheme against ZELOCCHI in California. K. WOODY is further alleged to have played a supportive role in maintaining communication and financial stability for the ongoing criminal activities, including sending emails and corresponding with IZA while he was in California, as part of a coordinated effort to target ZELOCCHI.

1    This communication and financial support directly facilitated the conspiracy and

2    criminal acts carried out in California.

3        14.    Defendant SPENCER THOMAS CORNELIA ("CORNELIA") is an

4    individual and a Nevada resident, and the owner of CORNELIA MEDIA. On

5    information and belief, CORNELIA collaborated with IZA to defame ZELOCCHI

6    through the publication of false and damaging online content. CORNELIA is

7    alleged to have used his media company, CORNELIA MEDIA, to disseminate

8    defamatory statements as part of the broader extortion scheme, causing

9    reputational harm to ZELOCCHI.

10        15.    Defendant CORNELIA MEDIA, LLC. ("C. MEDIA") is a Nevada

11    corporation owned by Defendant CORNELIA that, on information and belief,

12    published defamatory content online that damaged ZELOCCHI's professional

13    reputation. CORNELIA MEDIA was a key tool used by CORNELIA and IZA to

14    harm ZELOCCHI's reputation as part of the extortion scheme, intentionally

15    publishing false statements to further the co-conspirators' objectives.

16        16.    Defendant KENNETH CHILDS ("CHILDS") is an individual and a

17    California resident, and the manager of PARAMOUNT. On information and belief,

18    CHILDS conducted illegal surveillance on behalf of IZA to assist in the extortion

19    and harassment of ZELOCCHI. CHILDS is further alleged to have used

20    investigative resources to track ZELOCCHI's whereabouts and movements,

21    relaying this information to the co-conspirators to aid in their criminal efforts.

22        17.    Defendant PARAMOUNT INVESTIGATIVE SERVICES

23    ("PARAMOUNT"), is a California corporation with its primary place of business

24    at 633 W. Fifth Street, Los Angeles, California, owned by Defendant CHILDS

25    that, on information and belief, participated in illegal surveillance of ZELOCCHI

26    in furtherance of the extortion and defamation scheme. PARAMOUNT was

1    utilized by CHILDS and the co-defendants to gather private information about

2    ZELOCCHI to be used in furtherance of their criminal activities.

3        18.    Defendants Does 1-10 ("DOES") are individuals whose identities are

4    currently unknown but who, on information and belief, assisted the named

5    defendants in the unlawful acts described in this complaint. DOES are believed to

6    have contributed to the extortion, harassment, and defamation of ZELOCCHI by

7    acting under the direction of the named defendants, furthering the conspiracy.

8        19.    Non-party DAVID DO ("DO") is an individual and a California

9    resident and business consultant. He is a material witness to the defendants' alleged

10   extortion and defamation efforts. Although not a party to this action, DO was

11   directly affected by the defendants' wrongful actions, including robbery,

12   defamation, and harassment, due to his business association with ZELOCCHI. DO

13   was hired by ZELOCCHI to assist in developing the website for A-Medicare, and

14   this professional relationship led the defendants to mistakenly believe that DO was

15   acting as ZELOCCHI's agent. The defendants targeted DO under the mistaken

16   assumption that DO was in possession of ZELOCCHI's laptop, which stored

17   valuable cryptocurrency, and sought to obtain it as part of their larger extortion

18   campaign.

19                           **FACTUAL BACKGROUND**

20   **I.    Formation of the Enterprise and Pattern of Racketeering Activity**

21       20.    Defendants IZA, T. WOODY, AU, DUDGEON, RAWLINGS, C.

22   QUINTENERO, M. QUINTENERO, K. WOODY, CORNELIA, C. MEDIA,

23   CHILDS, PARAMOUNT, and DOES 1-10 (collectively, the "Defendants"),

24   formed an association-in-fact enterprise (the "Enterprise") within the meaning of

25   18 U.S.C. § 1961(4). The Enterprise engaged in a pattern of racketeering activity,

26   including but not limited to, extortion, fraud, robbery, kidnapping, criminal

1  copyright infringement, obstruction of justice, criminal impersonation, and

2  violations of the Computer Fraud and Abuse Act ("CFAA"). The Enterprise's

3  primary objective was unlawfully acquiring ZELOCCHI's cryptocurrency,

4  beginning as early as 2018 when Defendant T. WOODY initially targeted

5  ZELOCCHI in California. By 2021, IZA, after being introduced to T. WOODY by

6  their mutual associate Milad Sarwari, began collaborating with T. WOODY to

7  carry out this goal.

8       21.    The Enterprise was formed with the primary objective of unlawfully

9  acquiring ZELOCCHI's cryptocurrency by force, threats, and deception, using

10  intimidation tactics against both ZELOCCHI and individuals associated with him,

11  such as DO. Initially, T. WOODY targeted ZELOCCHI in 2018, attempting to

12  extort him through access to his laptop. When T. WOODY was later incarcerated

13  in the Philippines for murder, he continued his extortion efforts remotely,

14  eventually conspiring with IZA. This connection, facilitated by Sarwari, helped

15  solidify their shared intent to seize ZELOCCHI's cryptocurrency by any means

16  necessary.

17      22.    On or about September 23, 2024, the Department of Justice filed a

18  criminal complaint against Defendant IZA (Case No. 2:24-mj-05809) in the

19  Central District of California for conspiracy against rights and evasion of tax

20  assessments. The investigation, spearheaded by the Federal Bureau of Investigation

21  (FBI), uncovered significant evidence of extortion, fraudulent activities, and

22  criminal conspiracy involving IZA and other co-conspirators. This criminal

23  complaint further corroborates the racketeering activities alleged in this action, as

24  the same extortion and criminal conduct are detailed in both proceedings.

25      23.    FBI investigative findings demonstrate a coordinated effort between

26  IZA and T. WOODY, along with others, to intimidate and extort ZELOCCHI.

1  Evidence, including text messages and financial records, shows that IZA and T.
2  WOODY worked in concert to target and harm ZELOCCHI. This collaboration
3  began after their introduction by Milad Sarwari and continued during T.
4  WOODY's incarceration in the Philippines. IZA provided support to T. WOODY's
5  efforts to extort cryptocurrency from ZELOCCHI, and T. WOODY's mother,
6  Defendant K. WOODY, played a crucial role by providing financial assistance to
7  facilitate their ongoing criminal activities. K. WOODY's involvement helped
8  sustain T. WOODY's ability to coordinate with IZA and others, further reinforcing
9  their participation in a single, unified RICO conspiracy. These findings are
10 supported by the FBI's investigation, including references to K. WOODY's
11 financial support in connection with the racketeering activities (Criminal
12 Complaint, Case No. 2:24-mj-05809, ¶¶ 7-18).

13       24.      The Defendants used interstate communications, including emails,
14 text messages, and social media, to carry out their schemes, which impacted
15 interstate commerce and caused substantial harm to ZELOCCHI.

16 **II.    Pattern of Racketeering Activity**

17       25.      On or about July 16, 2018, during a business meeting held at the
18 Chamberlain Hotel in West Hollywood, T. WOODY, through unauthorized access
19 during ZELOCCHI's visit to the restroom, changed the password to ZELOCCHI's
20 laptop. This initial breach of security enabled T. WOODY to begin his extortion
21 attempts, threatening to permanently lock ZELOCCHI out of his laptop and his
22 cryptocurrency accounts if his demands were not met.

23       26.      On October 10, 2018, ZELOCCHI received a threatening email
24 demanding $1 million in bitcoins. The sender, identifying himself with the
25 UGNAZI group, threatened to ruin ZELOCCHI's career and harm his loved ones if
26 the demands were not met. These threats extended to graphic and vulgar emails

1   and text messages, where T. WOODY threatened ZELOCCHI's family's safety,

2   leveraging the UGNAZI identity to instill fear and compliance.

3       27.     In December 2018, IZA fraudulently induced ZELOCCHI to invest 10

4   bitcoins (approximately $30,000) in a cryptocurrency mining software scheme.

5   The connection between IZA and ZELOCCHI was first established through Milad

6   Sarwari, an associate of T. WOODY, in or around late October 2018. Sarwari

7   contacted ZELOCCHI to discuss a potential investment opportunity related to a

8   project called "Cryptic," which was described as a system designed to improve the

9   security of cryptocurrency wallets. At that time, Sarwari also introduced

10  ZELOCCHI to IZA, who later presented the fraudulent investment opportunity.

11  IZA misrepresented the returns and ceased communication after receiving the

12  investment, only reappearing in November 2021 with a deceptive apology and

13  extortion scheme.

14      28.     On or about November 2021, CHILDS, through PARAMOUNT, was

15  hired by IZA to conduct unauthorized surveillance on ZELOCCHI. This

16  surveillance included photography and video recording within ZELOCCHI's

17  private residence, and the information gathered was used by Defendants to plan

18  and execute multiple attacks, including the robbery of DO and the home invasion

19  of ZELOCCHI's apartment.

20      29.     On November 21, 2021, Defendants IZA, DUDGEON, and

21  RAWLINGS, armed with firearms, forcibly detained ZELOCCHI at an Arco gas

22  station in Corona, California. They believed the bags in ZELOCCHI's car

23  contained his cryptocurrency-laden laptop. This kidnapping and robbery occurred

24  after conspiring with T. WOODY, who helped IZA plan and coordinate the

25  kidnapping as an alternative means of acquiring the laptop and ZELOCCHI's

26  cryptocurrency. ZELOCCHI asserts that IZA, T. WOODY, and K. WOODY had

planned to capture ZELOCCHI and take the laptop, intending to torture him to reveal the password to his cryptocurrency wallets. Although the bags were later returned, the act constituted robbery. The Defendants later provided false statements to law enforcement to evade arrest and obstruct the investigation.

30.    In or around March 2022, Defendants, acting as part of the racketeering enterprise, targeted DO in a series of coordinated criminal actions. Defendants mistakenly believed that DO was in possession of a laptop containing ZELOCCHI's cryptocurrency and other sensitive business information. DO had a business relationship with ZELOCCHI and had been hired to develop the website for A-Medicare, ZELOCCHI's healthcare venture. The Defendants' mistaken belief that DO possessed ZELOCCHI's laptop stemmed from surveillance of DO and ZELOCCHI's interactions. This laptop, in fact, belonged to ZELOCCHI, and Defendants sought to obtain it through criminal means. The wrongful targeting of DO was intended to further Defendants' broader scheme of extorting cryptocurrency from ZELOCCHI by intimidating those associated with him, including DO.

31.    On March 12, 2022, Defendant M. QUINTENERO, acting under the direction of IZA, forcibly took DO's laptop bag, mistakenly believing it contained ZELOCCHI's laptop with cryptocurrency. This belief likely originated from a meeting held on the evening of March 5, 2022, when DO met with ZELOCCHI to review the progress of the A-Medicare website DO was redesigning for ZELOCCHI's business venture. After the meeting, DO left with his own laptop bag, and Defendants assumed it contained ZELOCCHI's laptop, either as a mistake or as part of an effort to intimidate and potentially gain access to ZELOCCHI's assets. It was later confirmed through discovery in a separate lawsuit involving IZA, ZELOCCHI, DO, CHILDS, and PARAMOUNT, that Defendants, including

IZA, had placed a surveillance team to monitor the March 5, 2022 meeting between ZELOCCHI and DO. Documents produced by PARAMOUNT during discovery included photographs of DO leaving ZELOCCHI's residence with his laptop bag. During his deposition in that case, IZA gave evasive answers when questioned about the photograph, suggesting uncertainty as to whether DO possessed ZELOCCHI's laptop. However, this testimony contradicted previous statements made by IZA regarding the basis for alleging that DO had possession of ZELOCCHI's laptop. These facts confirm that Defendants began targeting DO based on their mistaken belief that DO had taken possession of ZELOCCHI's laptop after this meeting. This theft was part of the broader racketeering scheme aimed at acquiring access to the cryptocurrency stored on ZELOCCHI's laptop. The theft of DO's devices, though targeting the wrong individual, demonstrates the lengths to which Defendants were willing to go to further their extortionate goals. The stolen laptop bag contained valuable electronic devices and data, further implicating Defendants in a pattern of criminal behavior aimed at both ZELOCCHI and his associates.

32.     Following the theft of DO's laptop, Defendants continued their extortionate efforts. On or about March 14, 2022, DO began receiving a series of threatening text messages demanding that he return a laptop allegedly in his possession. These threats, which included violent threats against DO and his family, were made by individuals acting under IZA's direction. The threats were a direct continuation of Defendants' mistaken belief that DO possessed a laptop belonging to ZELOCCHI. These actions further demonstrate the Defendants' pattern of racketeering activity aimed at pressuring both DO and ZELOCCHI to surrender cryptocurrency.

33.     Later that same day, on March 14, 2022, DO's vehicle was vandalized by individuals believed to be acting under IZA's orders. The damage to DO's vehicle was severe and calculated, intended to intimidate him into complying with Defendants' demands. This act of vandalism was part of the continuing extortion and intimidation campaign, which was ultimately aimed at ZELOCCHI through the targeting of DO. Defendants' actions against DO were intended to coerce him into surrendering what they mistakenly believed was ZELOCCHI's laptop containing cryptocurrency.

34.     In a continuation of the intimidation campaign, on March 18, 2022, at approximately 2:15 AM, an unidentified assailant, believed to be acting under IZA's direction, threw a cement brick through the back kitchen window of DO's residence. Although there were no direct eyewitnesses, the act was attributed to IZA based on the consistent pattern of intimidation and coercion that had been orchestrated by him in furtherance of the enterprise's objectives. The ongoing threats and harassment aimed at DO were part of Defendants' broader scheme to force compliance with their demand for a laptop they believed was in DO's possession. This attribution to IZA was further supported by subsequent threatening text messages that specifically referenced the vandalism, which were sent to DO by individuals acting under IZA's direction, escalating the pressure and intimidation against DO.

35.     On March 30, 2022, at approximately 1:20 AM, ZELOCCHI's apartment in Los Angeles was forcibly entered by three men armed with guns and knives, one of whom was IZA. IZA and the other intruders attempted to push their way into the apartment after successfully kicking in the front door. In self-defense, ZELOCCHI fired several shots from his firearm, causing the intruders to flee. The incident was documented by the Los Angeles Police Department under Incident

1  #22033000000220. Despite providing this information to law enforcement, no

2  immediate arrests were made. Following this event, IZA continued to harass

3  ZELOCCHI, including sending a Telegram message on June 4, 2022, with a video

4  of the home invasion and further threats.

5      36.    As a result of these escalating attacks, ZELOCCHI lived in constant

6  fear for his life and the safety of those close to him. Having already endured the

7  trauma of being kidnapped at the Arco gas station in November 2021, followed by

8  the continued harassment and violent attempts to intimidate him, including the

9  break-in at his apartment, the psychological toll on ZELOCCHI was immense. He

10 suffered from severe emotional distress, anxiety, and sleepless nights, haunted by

11 the knowledge that IZA and his associates were willing to go to extreme lengths to

12 harm him. The video sent by IZA after the break-in was a deliberate attempt to

13 exacerbate this fear and suffering, reminding ZELOCCHI of the Defendants'

14 ongoing threat to his safety. Unable to feel safe anywhere in Los Angeles,

15 ZELOCCHI was ultimately forced to flee the country to escape the Defendants'

16 threats. Even while abroad, ZELOCCHI remained in fear of returning to the United

17 States, knowing that IZA continued to pose a danger to him and his loved ones.

18 The ongoing threat of violence, combined with IZA's ability to act without

19 consequence, left ZELOCCHI feeling powerless and deeply fearful of further

20 harm.

21     37.    Beginning in or around May 2022, CORNELIA, through C. MEDIA,

22 engaged in a defamatory campaign targeting both ZELOCCHI and DO, working in

23 concert with IZA and T. WOODY to further the objectives of their enterprise. This

24 campaign included the production and dissemination of multiple defamatory

25 videos on YouTube, Rumble, Reddit, TikTok, and other social media platforms. In

26 these videos, CORNELIA appeared on camera, delivering a fabricated and

1  elaborate narrative falsely portraying IZA as a victim and accusing both

2  ZELOCCHI and DO of criminal activity and fraudulent behavior. This narrative

3  was crafted by IZA and T. WOODY in collaboration with CORNELIA, and was

4  laced with accusations that, ironically, mirrored the very actions and criminal

5  behavior that IZA and his co-conspirators had committed against ZELOCCHI and

6  DO. Nearly every aspect of CORNELIA's fabricated narrative could be traced back

7  to actions that IZA and his co-conspirators had taken against ZELOCCHI and DO.

8  The videos featured publicly available images and video clips of ZELOCCHI

9  sourced from the internet, along with surveillance photos taken by PARAMOUNT,

10  some of which were deceptively altered to support the false narrative created by

11  IZA and T. WOODY. Additionally, in one of the videos, CORNELIA included a

12  segment that showed a clip from a privately recorded video stored exclusively on

13  one of DO's stolen devices. CORNELIA used the clip to mock DO's appearance,

14  ending with an ominous comment intended to intimidate DO, suggesting that he

15  may eventually find himself running away in fear. This inclusion of stolen footage

16  serves as circumstantial evidence of IZA's involvement in the theft of DO's

17  devices and his connection with T. WOODY and CORNELIA. In or around

18  February 2023, IZA sent a telegram message to ZELOCCHI boasting about his

19  ongoing efforts to destroy ZELOCCHI's life and further coercing him to comply

20  with his demands. During this message, IZA admitted to working in collaboration

21  with T. WOODY, CORNELIA, and another associate, Mir Islam, to execute their

22  defamatory campaign against ZELOCCHI. It is believed that discovery will reveal

23  evidence of a $20,000 payment from IZA to CORNELIA as part of an agreement

24  to create and distribute the defamatory content, which IZA and T. WOODY had

25  threatened would ruin ZELOCCHI's reputation. The defamatory campaign also

26

extended to a petition published on change.org, which further damaged the reputations of both ZELOCCHI and DO.

38.    On July 7, 2022, Defendants orchestrated an elaborate scheme to criminally impersonate DO by hacking Disneyland's Instagram account and posting defamatory content that falsely framed DO as responsible for the breach. This content included derogatory captions and fabricated statements that portrayed DO as a hacker, causing significant public humiliation and irreparable damage to his online reputation. The incident was part of the broader racketeering scheme aimed at coercing and intimidating DO in order to indirectly pressure ZELOCCHI into compliance with Defendants' demands. Moreover, this portrayal of DO as a hacker was later used by IZA in a frivolous lawsuit filed against both ZELOCCHI and DO. In that lawsuit, IZA falsely alleged that DO was a hacker acting as an accomplice to ZELOCCHI's purported criminal activities. IZA sought to exploit the public attention generated by the criminal impersonation and media coverage of the Disneyland hack to bolster his fabricated narrative. This manipulation of the media and subsequent litigation illustrates Defendants' ongoing efforts to damage both DO's and ZELOCCHI's reputations as part of their coordinated campaign of extortion and intimidation.

39.    Defendants DUDGEON, RAWLINGS, and C. QUINTENERO abused their positions as law enforcement officers to illegally access non-public information about ZELOCCHI and DO. This misuse of law enforcement resources enabled Defendants to locate and target both individuals with precision, carrying out multiple coordinated attacks that resulted in financial and emotional harm.

40.    Defendants T. WOODY, K. WOODY, and IZA conspired to orchestrate a series of attacks against ZELOCCHI, intending to extort cryptocurrency and damage his reputation. As part of the conspiracy, they enlisted

other members of the Enterprise, including DUDGEON, RAWLINGS, and
QUINTENERO, who played key roles in planning and executing the attacks. The
conspiracy also involved efforts to obstruct law enforcement investigations, using
intimidation tactics and financial resources to maintain the momentum of their
criminal enterprise.

41.     Defendant K. WOODY played a crucial role in aiding and abetting the
Enterprise by providing financial support to her son, T. WOODY, and co-
conspirator IZA. K. WOODY's involvement was not passive or incidental; she
actively facilitated the extortion scheme by coordinating and supplying funds that
were critical in sustaining the Enterprise's criminal activities. These funds were
used to further the extortion attempts, including financing T. WOODY's continued
coordination with IZA and other members of the Enterprise following his
incarceration in the Philippines. Moreover, based on screenshotted conversations
between K. WOODY and her son, she was fully aware of and in support of the
kidnapping of ZELOCCHI as part of the broader scheme to extort cryptocurrency.
Her financial assistance and support for these criminal activities enabled the
ongoing racketeering efforts directed at ZELOCCHI, including attacks designed to
extort cryptocurrency and undermine his reputation. Her involvement is further
evidenced by communications, financial records, and messages directly linking her
to the broader conspiracy, highlighting her significant role in furthering the
Enterprise's illegal objectives.

42.     As a result of the escalating violence, harassment, and threats
orchestrated by IZA, T. WOODY, and their co-conspirators, ZELOCCHI was
ultimately forced to flee the country in fear for his life. The Defendants' actions,
including multiple attempts to extort cryptocurrency, violent attacks, and
coordinated efforts to damage his reputation, left ZELOCCHI with no choice but to

1  seek safety abroad. Even while out of the country, ZELOCCHI remained in fear of

2  further harm due to IZA's continued threats and the ongoing criminal activities of

3  the Enterprise.

## FIRST CAUSE OF ACTION

**Violation of Racketeer Influenced and Corrupt Organizations Act (RICO) 18**

**U.S.C. 1964(c) (d)**

**(ZELOCCHI Against All Defendants)**

8      43.    ZELOCCHI re-alleges and incorporates by reference the foregoing

9  paragraphs as if fully set forth herein.

10      44.    Defendants IZA, T. WOODY, AU, DUDGEON, RAWLINGS, C.

11  QUINTENERO, M. QUINTENERO, K. WOODY, CORNELIA, C. MEDIA,

12  CHILDS, PARAMOUNT, and DOES 1-10 formed and participated in an

13  enterprise within the meaning of 18 U.S.C. § 1961(4), engaging in a continuous

14  pattern of racketeering activity to extort ZELOCCHI and harm his business and

15  reputation.

16      45.    The enterprise engaged in a pattern of racketeering activity, involving

17  multiple predicate acts as defined under 18 U.S.C. § 1961(1), including but not

18  limited to:

19      a.  **Extortion and attempted extortion**: Defendants threatened

20      ZELOCCHI with physical harm, reputational damage, and

21      financial losses unless he surrendered cryptocurrency assets,

22      including the threats made by T. WOODY demanding $1 million

23      in Bitcoin (July 3, 2018), and the physical confrontations at the

24      Arco gas station and the March 30, 2022 home invasion.

b. **Investment fraud:** Defendant IZA falsely represented investment opportunities to ZELOCCHI, leading ZELOCCHI to invest 10 bitcoins in a fraudulent cryptocurrency venture.

c. **Fraudulent legal actions:** Defendants AU and IZA each filed frivolous lawsuits against ZELOCCHI, falsely accusing ZELOCCHI of wrongful acts with the ulterior motive of harassment, pressure, and furthering the extortion scheme. These lawsuits were part of the enterprise's broader efforts to harm ZELOCCHI's reputation and obstruct justice.

d. **Robbery and theft:** On November 21, 2021, at the Arco gas station in Corona, California, Defendants IZA, DUDGEON, and RAWLINGS forcibly took ZELOCCHI's bags containing valuable personal and business items. This act was part of the enterprise's broader scheme to obtain access to ZELOCCHI's laptop, which they believed contained valuable cryptocurrency. In a separate incident on March 12, 2022, Defendant M. QUINTENERO, acting under the direction of IZA, forcibly took non-party DO's laptop bag, mistakenly believing it contained ZELOCCHI's laptop with cryptocurrency. These thefts were motivated by Defendants' desire to unlawfully obtain control over the cryptocurrency stored on ZELOCCHI's laptop and form part of their extortionate scheme.

e. **Kidnapping and robbery:** On November 21, 2021, as part of the same broader extortion scheme, Defendants IZA, DUDGEON, and RAWLINGS kidnapped and forcibly detained ZELOCCHI at an Arco gas station in Corona, California. They

believed that the bags in ZELOCCHI's car contained his cryptocurrency-laden laptop. The robbery of ZELOCCHI's bags, which occurred alongside the kidnapping, was designed to coerce him into surrendering control over the cryptocurrency.

f. **Computer Fraud and Abuse Act (CFAA) violations**: Defendant T. WOODY altered the password on ZELOCCHI's laptop without authorization, blocking ZELOCCHI's access to his cryptocurrency wallet. This unauthorized action was intended to gain leverage over ZELOCCHI as part of the broader extortion scheme, with T. WOODY threatening to permanently lock ZELOCCHI out of his cryptocurrency unless his demands were met. Additionally, Defendant IZA accessed DO's password-protected laptop without authorization. Although IZA initially intended to search the laptop for information or clues to access ZELOCCHI's cryptocurrency, he instead discovered video content that he later provided to CORNELIA for use in publishing defamatory material against ZELOCCHI.

g. **Defamation:** Defendants CORNELIA and C. MEDIA used stolen data obtained from DO's and ZELOCCHI's devices to produce and disseminate defamatory videos online. These videos were further supplemented with altered photos and images obtained through illegal surveillance conducted by PARAMOUNT and CHILDS on ZELOCCHI and DO, as well as publicly available images from ZELOCCHI's and DO's social media accounts and ZELOCCHI's various actor profile pages, including IMDb. The defamatory videos falsely portrayed

ZELOCCHI as a scammer and criminal, with DO depicted as his accomplice, all in an effort to damage ZELOCCHI's reputation. This defamation was part of the enterprise's broader scheme to publicly ruin ZELOCCHI and deliver on their threats, thereby adding further pressure for ZELOCCHI to comply with the extortion demands.

h. **Illegal surveillance:** Defendant CHILDS and PARAMOUNT INVESTIGATIVE SERVICES conducted unauthorized surveillance of ZELOCCHI, including the taking of photographs and video footage within ZELOCCHI's private residences. This information was used to monitor ZELOCCHI's movements and intimidate him as part of the extortion scheme.

i. **Obstruction of Justice:** Defendants IZA, DUDGEON, and RAWLINGS used their law enforcement connections to obstruct justice by evading arrest and ensuring video evidence from the Arco gas station was destroyed. This included leveraging their influence to prevent internal investigations from moving forward.

j. **Obstruction of Criminal Investigation:** DUDGEON and RAWLINGS, in their roles as law enforcement officers, actively obstructed investigations into the kidnapping of ZELOCCHI. They used their official capacities to impede criminal inquiries, ensuring that law enforcement investigations into the racketeering acts were thwarted.

k. **Continuity and threat of future harm:** The enterprise engaged in a continuous pattern of racketeering activity over several years. The Defendants' ongoing attempts to coerce, defame, and

extort ZELOCCHI demonstrate the continuity of the enterprise.
Defendants have indicated a continued interest in pursuing
unlawful activities, particularly if ZELOCCHI relocates to Los
Angeles County, posing an ongoing threat of future harm.

46.     As a direct and proximate result of Defendants' racketeering activities,
ZELOCCHI has suffered significant financial losses, reputational harm, emotional
distress, and physical injuries. This includes delays in ZELOCCHI's business
venture, A-Medicare, due to the need to relocate and the impact on potential
investors caused by the defamatory campaign.

47.     ZELOCCHI seeks compensatory damages, treble damages under 18
U.S.C. § 1964(c), punitive damages, and injunctive relief to prevent further illegal
activities by Defendants.

## SECOND CAUSE OF ACTION

**Violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030**
**(ZELOCCHI Against T. WOODY, IZA, M. QUINTENERO, and DOES 1-10)**

48.     ZELOCCHI re-alleges and incorporates by reference the foregoing
paragraphs as if fully set forth herein.

49.     Defendants T. WOODY, along with IZA, M. QUINTENERO, and
DOES 1-10, violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by
unlawfully accessing and altering the contents of ZELOCCHI's personal laptop.

50.     On or about July 3, 2018, T. WOODY, without authorization,
accessed ZELOCCHI's laptop and altered the password to deny him access to his
cryptocurrency wallet stored on the device. This action constituted a violation of
18 U.S.C. § 1030(a)(2)(C) by depriving ZELOCCHI of his ability to access
valuable information and funds.

51.    On March 12, 2022, Defendant M. QUINTENERO forcibly took a laptop bag belonging to DO, which contained valuable electronic devices. Although this incident involved DO's property, it later became apparent that video footage stored on one of DO's devices, which included materials related to ZELOCCHI, was accessed without authorization. This unauthorized access to footage indirectly connected to ZELOCCHI's personal and business life caused reputational damage, as the stolen content was later used in defamatory videos published online.

52.    IZA provided the stolen, unauthorized video content to CORNELIA, who used the stolen data to publish defamatory material about ZELOCCHI and DO on various online platforms. In these defamatory videos, DO was portrayed as a hacker, and ZELOCCHI was named as his accomplice, further suggesting that ZELOCCHI was involved in illegal activities. This portrayal not only damaged ZELOCCHI's personal reputation but also created doubts about the legitimacy of his business ventures, including A-Medicare, by associating him with fraudulent behavior and hacking. The defamatory content, while not directly attacking the business, nonetheless cast a shadow over ZELOCCHI's operations by implying that his business could be involved in or associated with illegal activity. This further compounded the harm to ZELOCCHI's reputation, both personally and professionally.

53.    As a direct and proximate result of the unauthorized access to ZELOCCHI's laptop and the use of stolen video content, ZELOCCHI suffered financial losses, significant reputational harm, and emotional distress. The defamatory portrayal of ZELOCCHI as an accomplice to DO, who was labeled a hacker, further compounded the damage to ZELOCCHI's professional and business reputation, including his business venture, A-Medicare. The unauthorized

1   access deprived ZELOCCHI of valuable cryptocurrency and business-related data

2   essential to his operations.

3       54.    ZELOCCHI seeks compensatory damages, punitive damages, and any

4   other relief the Court deems appropriate under the CFAA, including damages for

5   financial losses, reputational harm, and the adverse impact on his business

6   operations.

7   ### THIRD CAUSE OF ACTION

8   **Violation of California Penal Code § 502**

9   **(Comprehensive Computer Data Access and Fraud Act)**

10  **(ZELOCCHI Against T. WOODY, IZA, and DOES 1-10)**

11      55.    ZELOCCHI re-alleges and incorporates by reference the foregoing

12  paragraphs as if fully set forth herein.

13      56.    Defendants T. WOODY, IZA, and DOES 1-10 knowingly and

14  without permission accessed ZELOCCHI's and DO's computer systems, data, and

15  networks in violation of California Penal Code § 502(c).

16      57.    On or about July 16, 2018, T. WOODY unlawfully altered the

17  password on ZELOCCHI's laptop without permission while ZELOCCHI briefly

18  left his computer unattended during a business meeting. This unauthorized access

19  effectively locked ZELOCCHI out of his cryptocurrency wallet, preventing him

20  from accessing valuable digital assets stored on the device.

21      58.    On or about March 12, 2022, Defendant M. QUINTENERO ("M.

22  QUINTENERO"), acting under IZA's direction, forcibly took DO's laptop bag,

23  which contained valuable electronic devices and sensitive business data, including

24  private and confidential business plans related to ZELOCCHI's healthcare venture,

25  A-Medicare.

26

59.     Following the theft of DO's laptop, IZA accessed DO's password-
protected laptop without permission, obtaining private video footage and other
sensitive data stored on the device. Clips of these private videos were later used by
CORNELIA and C. MEDIA to embarrass and humiliate DO by publicly displaying
the private intimate moments captured by DO in his videos. This video data was
added to and included in defamatory content targeting ZELOCCHI and Do.

60.     Defendants' unauthorized access and use of ZELOCCHI's and DO's
digital devices and data were part of a broader extortion scheme, aimed at
leveraging sensitive information for financial gain and reputational damage.

61.     The stolen laptops contained valuable business data and proprietary
content essential to ZELOCCHI's business ventures, including designs and
graphics for ZELOCCHI's healthcare business website, A-Medicare. Defendants'
actions significantly impaired ZELOCCHI's ability to conduct business and caused
extensive financial losses.

62.     As a direct and proximate result of Defendants' violation of California
Penal Code § 502, ZELOCCHI has suffered significant harm, including financial
losses, reputational damage, and emotional distress.

63.     ZELOCCHI seeks compensatory damages, injunctive relief,
foreseeable attorneys' fees, and costs, as well as any other relief deemed
appropriate by the Court, pursuant to California Penal Code § 502(e).

## FOURTH CAUSE OF ACTION

### Attempted Extortion

### (ZELOCCHI Against Defendants IZA, T. WOODY, and DOES 1-10)

64.     ZELOCCHI re-alleges and incorporates by reference the foregoing
paragraphs as if fully set forth herein.

65.     Defendants IZA, T. WOODY, and DOES 1-10 engaged in a pattern of attempted extortion targeting ZELOCCHI and DO, threatening physical harm, reputational damage, and financial loss to coerce them into transferring cryptocurrency assets or information.

66.     On or about July 3, 2018, T. WOODY, through multiple communications including via email and Telegram, with some under the guise of being associated with UGNAZI, a publicly known "hacktivist group," demanded that ZELOCCHI transfer $1 million in Bitcoin to him, threatening violence if ZELOCCHI failed to comply.

67.     On multiple occasions, IZA demanded that ZELOCCHI surrender his laptop containing ZELOCCHI's cryptocurrency and repeatedly threatened ZELOCCHI with violence and reputational harm if he did not comply. IZA used threats of public humiliation and personal harm to ZELOCCHI, DO, and their loved ones as leverage to coerce compliance with his demands. In furtherance of his threats, IZA, with the help of CORNELIA and C. MEDIA, later engaged in a public smear campaign, falsely accusing ZELOCCHI of stealing a laptop, among other things, to damage ZELOCCHI's reputation.

68.     Similarly, Defendants mistakenly believed that DO was in possession of the same laptop and began directing extortionate threats towards him starting on March 14, 2022, threatening physical violence against DO and his family if he did not surrender the laptop.

69.     Defendants IZA, DUDGEON, and RAWLINGS attempted to extort ZELOCCHI at the Arco gas station on November 21, 2021, by forcibly taking ZELOCCHI's bags and demanding the transfer of his cryptocurrency.

70.     The extortion attempts were part of a broader scheme by Defendants to gain access to ZELOCCHI's cryptocurrency holdings, while also using

1  defamatory videos and public accusations to ruin ZELOCCHI's reputation in order
2  to coerce his compliance.

3      71.     As a direct and proximate result of Defendants' attempted extortion,
4  ZELOCCHI suffered significant emotional distress, reputational damage, and
5  financial harm, including delays in the development of his business venture, A-
6  Medicare, due to the loss of potential investors who discovered the defamatory
7  content published by CORNELIA and C. MEDIA.

8      72.     ZELOCCHI seeks compensatory damages, punitive damages, and
9  injunctive relief to prevent further extortion attempts by Defendants.

**FIFTH CAUSE OF ACTION**

**Aiding and Abetting Attempted Extortion**

**(ZELOCCHI Against K. WOODY, IZA, DUDGEON, RAWLINGS,**

**M. QUINTENERO, C. QUINTENERO, CORNELIA, C. MEDIA,**

**and DOES 1-10)**

15     73.     ZELOCCHI re-alleges and incorporates by reference the foregoing
16  paragraphs as if fully set forth herein.

17     74.     Defendants K. WOODY, IZA, DUDGEON, RAWLINGS, M.
18  QUINTENERO, C. QUINTENERO, CORNELIA, C. MEDIA, and DOES 1-10
19  aided and abetted IZA and T. WOODY in their attempts to extort ZELOCCHI
20  by providing assistance and resources that facilitated the extortion scheme.

21     75.     Defendant K. WOODY, fully aware of T. WOODY's extortion
22  scheme, provided substantial financial support to ensure T. WOODY could
23  continue his extortion efforts while incarcerated. This included providing funds to
24  enable T. WOODY to access communication devices, which were instrumental in
25  making threats to extort ZELOCCHI from prison.

26

76.     Defendants IZA and K. WOODY worked together to enable T. WOODY's extortion scheme by ensuring he had the means to carry out his threats, thereby aiding and abetting the attempted extortion.

77.     Defendant IZA materially assisted in the extortion by coordinating the physical threats against ZELOCCHI, including the incident at the Arco gas station on November 21, 2021, where IZA, DUDGEON, and RAWLINGS forcibly took ZELOCCHI's bags and made demands for cryptocurrency.

78.     Defendants DUDGEON and RAWLINGS, using their positions as former and active law enforcement officers, respectively, provided IZA with substantial assistance, including participating in physical confrontations with ZELOCCHI and leveraging their law enforcement connections to protect the extortion scheme and obstruct investigations.

79.     Defendant M. QUINTENERO aided the extortion scheme by forcibly mugging DO on March 12, 2022, taking DO's laptop bag containing valuable electronic devices and data, which was falsely believed to contain ZELOCCHI's laptop.

80.     Defendant C. QUINTENERO, acting under the color of his official position and leveraging access to sensitive law enforcement databases, unlawfully retrieved private information, including Department of Motor Vehicles (DMV) and vehicle registration records of ZELOCCHI and his associates. C. QUINTENERO then provided this information to IZA for remuneration, knowing it would be used to surveil, track, and intimidate ZELOCCHI and his associates as part of the extortion scheme.

81.     The use of this unlawfully obtained data facilitated the Defendants' efforts to locate, monitor, and pressure ZELOCCHI, making threats against his family and associates.

82.     C. QUINTENERO also facilitated the introduction of IZA to M. QUINTENERO, who directly participated in the physical robbery of non-party DO, acts integral to the broader extortion effort targeting ZELOCCHI.

83.     Defendants CORNELIA and C. MEDIA further aided and abetted the extortion scheme by creating and disseminating defamatory videos about ZELOCCHI, which included stolen video data provided by IZA. These videos were part of the overall strategy to harm ZELOCCHI's reputation, coerce compliance with extortionate demands, and apply additional pressure to damage ZELOCCHI's personal and business interests.

84.     The actions of Defendants DUDGEON, RAWLINGS, M. QUINTENERO, K. WOODY, CORNELIA, Cornelia Media Group, C. QUINTENERO, and DOES 1-10 were done with full knowledge of the wrongful nature of the extortion scheme and with the intent to facilitate the achievement of T. WOODY's objectives.

85.     As a direct and proximate result of Defendants' aiding and abetting attempted extortion, ZELOCCHI suffered emotional distress, reputational harm, fear for his personal safety, and financial losses, including delays to his business venture, A-Medicare.

86.     ZELOCCHI seeks compensatory damages, punitive damages, and any other relief the Court deems appropriate.

## SIXTH CAUSE OF ACTION

### Conspiracy to Violate Civil RICO (18 U.S.C. § 1962(d))

### (ZELOCCHI Against IZA, T. WOODY, AU, DUDGEON, RAWLINGS, M. QUINTENERO, K. WOODY, CORNELIA, C. MEDIA, and DOES 1-10)

87.     ZELOCCHI re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

88.     Defendants IZA, T. WOODY, DUDGEON, RAWLINGS, M.
QUINTENER, K. WOODY, CORNELIA, C. MEDIA, and DOES 1-10
knowingly conspired to violate the Racketeer Influenced and Corrupt
Organizations Act (RICO) by participating in a pattern of racketeering activity,
including extortion, fraud, robbery, kidnapping, obstruction of justice, and
defamation, all intended to harm ZELLOCHI.

89.     Defendants conspired together to conduct and participate, directly
or indirectly, in the conduct of the affairs of an enterprise through a pattern of
racketeering activity, as defined under 18 U.S.C. § 1961(1). The enterprise
engaged in multiple predicate acts, including but not limited to:

      a. Extortion and attempted extortion: Demanding
         cryptocurrency from ZELOCCHI under threats of violence
         and reputational harm.

      b. Kidnapping: Defendants IZA, DUDGEON, and RAWLINGS
         kidnapped ZELOCCHI as part of their scheme to extort
         cryptocurrency from him.

      c. Defamation: Publicly smearing ZELLOCHI's reputation
         through defamatory videos created and disseminated by
         CORNELIA and C. MEDIA, using stolen data obtained from
         DAVID DO to illustrate fabricated narratives provided by T.
         WOODY and IZA.

      d. Obstruction of justice: Defendants DUDGEON and
         RAWLINGS used their law enforcement connections to
         obstruct investigations into the criminal acts committed by the
         enterprise.

e. Robbery and theft: Defendants IZA, DUDGEON, and RAWLINGS forcibly took ZELLOCHI's bags at the Arco gas station, and M. QUINTENERO mugged non-party DO, stealing his laptop bag.

f. Fraudulent legal actions: Defendants IZA and AU filed frivolous lawsuits to harass ZELOCCHI and divert attention from their illegal activities.

90.     Defendant K. WOODY provided substantial financial support to T. WOODY, enabling him to communicate and continue threatening ZELOCCHI while incarcerated.

91.     Defendant C. QUINTENERO unlawfully accessed confidential information from law enforcement databases to assist Defendant IZA in tracking and surveilling ZELOCCHI.

92.     Defendants CORNELIA and C. MEDIA conspired with IZA to publish defamatory videos to publicly smear ZELOCCHI and undermine his business reputation, as part of the extortion scheme.

93.     As part of the conspiracy, Defendants engaged in repeated acts of extortion, kidnapping, robbery/assault, unauthorized access to protected devices, and defamation. The kidnapping of ZELOCCHI was one of several violent acts carried out to coerce him into surrendering cryptocurrency. Additionally, the unauthorized access to DO's devices, though targeting the wrong individual, was part of the broader scheme to intimidate and harm those associated with ZELOCCHI. By using video content stolen from DO's devices in defamatory videos, Defendants demonstrated their continuous effort to damage ZELOCCHI's reputation, further evidencing the pattern of racketeering activity

94.      Each of the Defendants had knowledge of and agreed to the
unlawful objectives of the enterprise, actively participating in and furthering
the conspiracy. The pattern of racketeering activity spanned several years and
included acts of extortion, kidnapping, unauthorized access to protected
devices, and defamation. The conspiracy is ongoing, with a continued threat of
future harm.

95.      As a direct and proximate result of Defendants' conspiracy to
violate RICO, ZELOCCHI suffered emotional distress, reputational damage,
financial harm, and loss of potential business opportunities.

96.      ZELOCCHI seeks compensatory damages, treble damages as
authorized by 18 U.S.C. § 1964(c), punitive damages, and any other relief the
Court deems appropriate.

## SEVENTH CAUSE OF ACTION

### Assault

### (ZELOCCHI Against IZA, DUDGEON, RAWLINGS, and DOES 1-10)

97.      ZELOCCHI re-alleges and incorporates by reference the foregoing
paragraphs as if fully set forth herein.

98.      Defendants IZA, DUDGEON, RAWLINGS, and DOES 1-10
engaged in conduct constituting assault against ZELOCCHI, intentionally
performing acts that caused ZELLOCHI to have a reasonable apprehension of
imminent harmful or offensive contact.

99.      On or about November 21, 2021, at the Arco gas station in Corona,
California, IZA, DUDGEON, and RAWLINGS, acting as part of their extortion
scheme, approached ZELLOCHI, physically threatened him, and forcibly took his
bags. Defendants acted in an aggressive and intimidating manner, creating an
imminent threat of harm and causing ZELOCCHI to reasonably fear for his safety.

100. On or about March 30, 2022, IZA and three unidentified associates (DOES 1-10), armed with guns and knives, forcibly entered ZELOCCHI's residence in an attempted home invasion. Defendants attempted to break into the home, and ZELLOCHI, in reasonable apprehension of imminent bodily harm, fired his firearm to protect himself, causing the intruders to flee. This incident further contributed to ZELLOCHI's fear of physical harm.

101. These actions by the Defendants were intentional, willful, and malicious, designed to intimidate and coerce ZELLOCHI into compliance with their extortionate demands.

102. As a direct and proximate result of Defendants' actions, ZELOCCHI suffered serious physical injuries during the incidents in question, including bruising, abrasions, and other trauma as a direct result of Defendants' violent actions. As a result of the assault, ZELOCCHI experienced significant emotional distress, including ongoing anxiety, fear for personal safety, and disruption to his daily life and business activities. ZELOCCHI was forced to relocate multiple times out of concern for his safety, resulting in financial losses related to moving expenses, and suffered inability to return to normal business operations due to the ongoing threats from Defendants.

103. ZELOCCHI seeks compensatory damages, punitive damages, and any further relief the Court deems just and proper.

**EIGTH CAUSE OF ACTION**

**Battery**

**(ZELOCCHI Against IZA, DUDGEON, RAWLINGS, and DOES 1-10)**

104. ZELOCCHI re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

105.    Defendants IZA, DUDGEON, RAWLINGS, and DOES 1-10 engaged
in intentional acts of battery against ZELOCCHI by willfully using physical force
against ZELOCCHI without consent or legal justification.

106.    On or about November 21, 2021, at the Arco gas station in Corona,
California, Defendants IZA, DUDGEON, and RAWLINGS physically assaulted
ZELOCCHI during a confrontation in which they forcibly took ZELOCCHI's
bags. Defendants applied physical force to ZELOCCHI's person during the
incident as part of their broader extortion scheme, causing ZELOCCHI to
reasonably fear for his physical safety and wellbeing.

107.    Defendants' actions were part of a coordinated plan to intimidate and
coerce ZELOCCHI into complying with their demands for cryptocurrency and
other valuable assets.

108.    Defendants' use of force was intentional, willful, and done without
ZELOCCHI's consent, resulting in harmful or offensive contact with
ZELOCCHI's person.

109.    As a direct and proximate result of Defendants' battery, ZELOCCHI
suffered physical pain, emotional distress, and fear for his personal safety.

110.    ZELOCCHI seeks compensatory damages, punitive damages, and any
other relief the Court deems just and proper.

## NINTH CAUSE OF ACTION

### Trespass to Land

### (ZELOCCHI Against IZA and DOES 1-10)

111.    ZELOCCHI re-alleges and incorporates by reference the foregoing
paragraphs as if fully set forth herein.

112.    On or about March 20, 2022, Defendants IZA and DOES 1-3, without permission or consent, entered ZELOCCHI's property located at 8630 Burton Way, Los Angeles, California, which constitutes a willful act of trespass.

113.    Defendants' entry onto ZELOCCHI's property was unauthorized, intentional, and conducted without ZELOCCHI's consent, with the intent to commit unlawful acts, including but not limited to the attempted burglary and/or to intimidate, harass, and threaten ZELOCCHI.

114.    As a direct result of Defendants' trespass, ZELOCCHI has suffered and continues to suffer emotional distress, anxiety, and fear for his personal safety and security of his property.

115.    The unauthorized entry by Defendants has caused ZELOCCHI to incur expenses related to repairing damages incurred by their forced entry and relocating to help ensure his safety, and has deprived him of the peaceful enjoyment of his property.

## TENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (ZELOCCHI Against T. WOODY, IZA, AU, CORNELIA, C. MEDIA, and DOES 1-10)

116.    ZELOCCHI re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

117.    Defendants IZA, T. WOODY, DUDGEON, RAWLINGS, and DOES 1-10 intentionally and recklessly engaged in extreme and outrageous conduct aimed at causing ZELOCCHI severe emotional distress.

118.    Defendants repeatedly threatened ZELOCCHI with physical violence, reputational harm, and financial ruin in an effort to coerce compliance with their extortionate demands. These threats were made in person, through text messages,

1  and through various other forms of communication, including defamatory public
2  content.

3      119.    The conduct of Defendants IZA, DUDGEON, and RAWLINGS at the
4  Arco gas station on November 21, 2021, where they physically assaulted
5  ZELOCCHI and took his personal belongings, caused ZELOCCHI to suffer
6  intense fear, anxiety, and distress for his personal safety.

7      120.    On March 30, 2022, Defendant IZA and DOES 1-10 attempted a
8  home invasion of ZELOCCHI's residence, armed with weapons, further instilling
9  fear for ZELOCCHI's life and security. ZELOCCHI was forced to defend himself
10  with a firearm, leading to significant psychological trauma and ongoing emotional
11  distress.

12      121.    Defendant T. WOODY, under the guise of his association with
13  UGNAZI, threatened ZELOCCHI with violent harm, including demands for
14  cryptocurrency under threats of death and personal injury.

15      122.    As a direct and proximate result of Defendants' intentional and
16  reckless actions, ZELOCCHI has suffered severe emotional distress, including
17  anxiety, fear, sleeplessness, and ongoing psychological trauma.

18      123.    Defendants' conduct was extreme, outrageous, and beyond the bounds
19  of decency in a civilized society, warranting significant compensatory and punitive
20  damages.

21      124.    ZELOCCHI seeks compensatory damages, punitive damages, and any
22  other relief the Court deems just and proper.

23  **ELEVENTH CAUSE OF ACTION**

24  **Defamation Per Se**

25  **(ZELOCCHI Against T. WOODY, IZA, AU, CORNELIA, C. MEDIA, and**
26  **DOES 1-10)**

125.    ZELOCCHI re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

126.    Defendants IZA, CORNELIA, C. MEDIA, and DOES 1-10 made and published false, defamatory statements about ZELOCCHI to third parties, including the public, through various online platforms, with the intent to harm ZELOCCHI's reputation.

127.    Defendant IZA, in coordination with CORNELIA and C. MEDIA, falsely accused ZELOCCHI of engaging in illegal and unethical conduct, including theft of a cryptocurrency-containing laptop that ZELOCCHI rightfully owned, and falsely portrayed ZELOCCHI as a criminal involved in fraudulent activities.

128.    Defendants CORNELIA and C. MEDIA produced, published, and disseminated defamatory videos across various platforms such as YouTube, Rumble, and other social media outlets. These videos falsely portrayed ZELOCCHI as engaging in criminal conduct, theft, and dishonesty, without any factual basis, and were disseminated to a wide audience with the specific intent to damage ZELOCCHI's personal and professional reputation.

129.    The defamatory statements made by Defendants were false, unprivileged, and made with actual malice, as Defendants knew the statements were false or acted with reckless disregard for their truth.

130.    The statements made by Defendants constitute defamation per se, as they falsely accused ZELOCCHI of criminal conduct, dishonesty, and moral turpitude, which are inherently damaging to ZELOCCHI's reputation, both personally and professionally.

131.    As a result of the defamatory videos and statements published by Defendants, ZELOCCHI's professional reputation has been severely damaged. The false accusations of criminal behavior, including claims that ZELOCCHI is a

1  scammer and fraud, caused him to lose multiple business opportunities and

2  partnerships, particularly within the entertainment and cryptocurrency industries.

3      132.    Specifically, ZELOCCHI's A-medicare business venture suffered

4  from the defamatory statements, as investors who had previously expressed interest

5  in the project withdrew their support after discovering the defamatory content.

6  Additionally, potential investors were deterred from engaging with A-medicare

7  due to the ongoing smear campaign, further delaying the project's development

8  and resulting in significant financial harm. The false public portrayal of

9  ZELOCCHI not only affected his business dealings but also damaged his public

10  image, leading to canceled projects, diminished credibility, and loss of income.

11      133.    Furthermore, ZELOCCHI has suffered severe emotional distress due

12  to the public nature of these false statements, including humiliation, anxiety, and

13  damage to personal and professional relationships. He has also incurred significant

14  costs in attempting to remove defamatory content and counter the false narratives

15  published online by Defendants, further compounding his financial losses and

16  emotional trauma.

17      134.    ZELOCCHI seeks compensatory damages, presumed damages for

18  defamation per se, punitive damages to punish Defendants for their malicious

19  conduct, and any other relief the Court deems just and proper.

20  **<u>TWELFTH CAUSE OF ACTION</u>**

21  **False Light Invasion of Privacy**

22  **(Zelocchi Against T. WOODY, IZA, M. QUINTENERO, CORNELIA, C.**

23  **MEDIA, CHILDS, PARAMOUNT, and DOES 1-10)**

24      135.    ZELOCCHI re-alleges and incorporates by reference the foregoing

25  paragraphs as if fully set forth herein.

26

136.   Defendants T. WOODY, IZA, M. QUINTENERO, CORNELIA, C. MEDIA, CHILDS, PARAMOUNT, and DOES 1-10 intentionally placed ZELOCCHI in a false light before the public through the dissemination of misleading and defamatory content.

137.   Defendants T. WOODY and IZA conspired with CORNELIA and his company C. MEDIA to produce and disseminate a series of defamatory videos on platforms such as YouTube, which cast ZELOCCHI in a false light by creating a highly misleading and untrue impression of ZELOCCHI's character and activities,

it.

1. For treble damages pursuant to 18 U.S.C. § 1964(c) for Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act (RICO).

2. For punitive damages sufficient to punish Defendants for their malicious, oppressive, and fraudulent conduct, and to deter similar future conduct.

3. For presumed damages, as allowed for defamation per se and false light invasion of privacy, which do not require proof of specific harm due to the inherently damaging nature of the false statements made by Defendants.

4. For an award of reasonable, foreseeable attorneys' fees and costs, as provided by law, including under 18 U.S.C. § 1964(c) and other applicable statutes.

5. For injunctive relief enjoining Defendants from continuing their unlawful conduct, including the publication and dissemination of defamatory content about ZELOCCHI, and further enjoining Defendants

1    from pursuing frivolous lawsuits against ZELOCCHI, or, in the

2    alternative, for an order dismissing such lawsuits with prejudice.

3    6.  For equitable relief, requiring Defendants to return stolen property

4    belonging to DAVID DO, or, in the alternative, to compensate

5    ZELOCCHI for the financial losses incurred in covering DAVID DO's

6    losses.

7    7.  For any other relief the Court deems just and proper.

8    / / /

9    / / /

10    / / /

11    / / /

12    ## **DEMAND FOR JURY TRIAL**

13    Plaintiff ENZO ZELOCCHI hereby respectfully requests a trial by jury on

14    all appropriate issues raised in this Complaint.

15

16

17

18
                          Respectfully submitted,
19                          In Pro Per

20    DATED: November 5, 2024

21

22

23                                        *Enzo Zelocchi*

24                                        ENZO ZELOCCHI
                                          Self-Represented
25

26

COMPLAINT AND DEMAND FOR JURY TRIAL
Page 40